Entered: September 26th, 2025
Signed: September 26th, 2025



**NANCY V. ALQUIST**
**U. S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

|  |  |
|---|---|
| In re:<br><br>UCHE MOSES ETUNNUH and<br>CHIKAMNELE IHEOMA ETUNNUH,<br><br>      Debtors. | Case No. 23-12470–NVA<br><br>Chapter 13 |
| KAPITUS SERVICING, INC.,<br>AS AGENT FOR KAPITUS LLC,<br><br>      Plaintiff,<br><br>v.<br><br>UCHE MOSES ETUNNUH and<br>CHIKAMNELE IHEOMA ETUNNUH,<br><br>      Defendants. | Adversary Proceeding No. 23-00181 |

## MEMORANDUM OPINION IN SUPPORT OF ORDER
## DENYING KAPITUS'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Kapitus Servicing, Inc., as agent for Kapitus LLC, ("Kapitus" or "Plaintiff") filed this adversary proceeding seeking a determination that a prepetition debt owed by the defendant-debtors Uche Moses Etunnuh ("Mr. Etunnuh") and Chikamnele Iheoma Etunnuh ("Ms. Etunnuh" and together with Mr. Etunnuh, "Defendants") is nondischargeable pursuant to

11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), and 523(a)(4).  [ECF No. 1].  The debt derives from a merchant funding agreement—also known as merchant cash advance agreements—entered into between the Plaintiff and pharmacies owned by Mr. Etunnuh, which Defendants personally guaranteed.

This matter comes before the Court on the *Plaintiff's Mtion for Summary Judgment* (the "Motion").  [ECF No. 33].  In support of the Motion, Plaintiff filed the *Affidavit of David Wolfson in Support of Plaintiff's Rule 56(A) Motion for Summary Judgment* (the "Affidavit"), *Declaration of Stuart R. Goldberg in Support of Plaintiff's Motion for Summary Judgment* ("Goldberg's Declaration"), *Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment* (the "Statement of Undisputed Material Facts"), and *Brief in Support of Plaintiff's Motion for Summary Judgment* ("Plaintiff's Brief").  [ECF Nos. 34–37].  The Defendants did not file a response to the Motion. After considering the Motion, the papers filed in support of the Motion, the lack of any response from the Defendants, the evidence, the applicable authorities, and viewing the facts and the inferences drawn therefrom in the light most favorable to the Defendants, the Court finds that there are genuine issues of material fact and the Plaintiff is not entitled to summary judgment.

## JURSIDICTION

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334.  The United States District Court for the District of Maryland has referred the bankruptcy case and this adversary proceeding to this Court pursuant to 28 U.S.C. § 247(a) and its Local Rule 402.  This proceeding involves claims that are statutorily core under 28 U.S.C. § 157(b)(1) and (b)(2).  This Court has constitutional authority to enter final orders in this proceeding.  To the extent this Court lacks such constitutional authority, this decision constitutes the Court's report and recommendation.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Civil Rule 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056. Where a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," the Civil Rules mandate entry of summary judgment. Fed. R. Civ. P. 56(a).

The burden of showing that there is no genuine dispute of material fact rests first with the moving party and requires only that the movant identify the basis for its motion and those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1). Once that burden is satisfied, the burden shifts to the non-moving party who may not rest on mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *See Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); Fed. R. Civ. P. 56(c)(1). Whether a fact is material depends on the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law and a dispute is "genuine" only if the evidence is such that a finder of fact reasonably could return a verdict for the non-moving party. *See id.*; *accord Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) ("A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.").

"The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party." *Ramirez v. Amazing Home Contractors, Inc.*, 114 F. Supp. 3d 306, 308 (D. Md. 2015). When considering a motion for summary judgment,

3

"the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.

> The court may grant summary judgment only if it concludes that the evidence could not permit a reasonable jury to return a favorable verdict. "Therefore, courts must view the evidence in the light most favorable to the nonmoving party and refrain from weighing the evidence or making credibility determinations."

*Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (cleaned up).  Civil Rule 56 sets forth certain procedural requirements for summary judgment motions:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322; *see also Anderson*, 477 U.S. at 252 (where defendant seeks summary judgment "based on the lack of proof of a material fact," court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented").

## BACKGROUND

The Court relies on the Adversary Complaint and exhibits appended thereto, the Answer, the Motion, the Affidavit, Goldberg's Declaration, the Statement of Undisputed Material Facts, and the Deemed Admitted Facts (as hereinafter defined).  The Court notes that, although the Defendants are represented by counsel, they have not filed anything in this proceeding since they filed their Answer.

### 1.    The Agreement

On October 26, 2021, Kapitus entered into a Forward Purchase Agreement (Fixed ACH Delivery) and related Security Agreement and Guaranty (collectively referred to herein as the "Agreement") with Frontier Health Services, LLC and Geipe Pharmacy, LLC, which both operated under the trade name of CareMax Pharmacy (Frontier Health Services, LLC, Geipe Pharmacy, LLC, and CareMax Pharmacy are collectively referred to herein as "CareMax"). Complaint [ECF No. 1] at ¶¶ 8, 11; Answer [ECF No. 27] at ¶¶ 8, 11; Ex. A to Compl. The Defendants were presidents, directors, owners, and members of CareMax, and made all decisions and statements to Kapitus relevant to the Agreement. Compl. at ¶ 8; Answer at ¶ 8.

Pursuant to the Agreement, Kapitus purchased certain future receivables of CareMax. Compl. at ¶ 11; Answer at ¶ 11; Ex. A to Compl.  Specifically, the Purchased Amount (the total dollar amount of receipts to be delivered to Kapitus) was $405,126.27, at a Purchase Price (the gross total paid for receipts purchased) of $275,596.10.  Ex. A to Compl.  The Net Purchase Price (the net total delivered to CareMax as consideration for purchase, equal to the Purchase Price less the closing fee and any payment made to Kapitus or any third party as agreed by CareMax) was $81,318.20.  Ex. A to Compl.  The Specified Percentage (percentage of receipts to be delivered until Purchased Amount is delivered to Kapitus) was 10.2%, with the condition that in the event

of any breach of any of the Transaction Documents (which include the Agreement, the Security Agreement, and the Guaranty), the Specified Percentage shall equal 100%. Ex. A to Compl. The Fixed ACH Terms provide that CareMax authorized Kapitus to debit $3,899.00 weekly (the Specified Amount and Frequency) from a designated deposit account. Compl. at ¶ 29; Answer at ¶ 29; Ex. A to Compl. The Specified Amount was an estimate of the Specified Percentage and could be reconciled to reflect CareMax's actual receipts at CareMax's request. Ex. A to Compl. CareMax granted a security interest in the property, rights, accounts, and other interests as set forth in a Security Agreement. Ex. A to Compl.

The Defendants each signed the Agreement as guarantors, and separately executed a Guaranty, through which they unconditionally guaranteed to Kapitus CareMax's performance of all the representations, warranties, covenants made by CareMax in the Agreement. Ex. A to Compl. The Guaranty also provides that "[i]t is understood by all parties that Guarantors are only guaranteeing that they will not take any action or permit [CareMax] to take any action that is a breach of the [Agreement] and is not making an absolute guaranty of repayment." Ex. A to Compl. Kapitus represents that, in its consideration of whether to fund particular merchants, it requires each merchant to provide certain written representations about its financial situation, operational plans, and intentions. Wolfson Aff. [ECF No. 34] at ¶ 8. These representations are contained within Section II of the Agreement, titled Representations, Warranties and Covenants (the "Representations"), and additionally in a separate document titled Representations and Acknowledgements – Funding is Contingent Upon Your Completion and Review by Kapitus (the "R&A"), which was executed by Ms. Etunnuh as the authorized representative of CareMax. Wolfson Aff. at ¶¶ 9, 12; Exs. A, B. to Compl. Kapitus further represents that, under its guidelines at the time, Kapitus would not have provided funding to CareMax or the Defendants if they had

6

been aware that any of the representations and warranties made by the Defendants in the R&A and Agreement were untrue.  Wolfson Aff. at ¶ 15.

Kapitus avers that within three weeks of Kapitus's funding, Defendants defaulted on their payment obligations, and continued to frequently default on payment obligations going forward. Wolfson Aff. at ¶ 19.  By May of 2022, Defendants completely prevented Kapitus's ACH payments from processing and prohibited Kapitus from collecting its receivables purchased under the Agreement.  *Id.*

### 2.    The Judgment

On July 5, 2022, Kapitus initiated litigation against CareMax and the Defendants in the Circuit Court of the County of Henrico, Commonwealth of Virginia (the "State Court").  Compl. at ¶ 36; Answer at ¶ 36.  On March 10, 2023, the State Court entered a judgment in favor of Kapitus and against CareMax and the Defendants in the amount of $412,433.46, plus interest at the judgment rate of ten percent from May 23, 2022 (the "Judgment").  Compl. at ¶ 36; Answer at ¶ 36; [Claim 14-2].  The Judgment was entered by default after the Defendants failed to make an appearance or file any pleadings in response to the complaint filed by Kapitus, which alleged a single count for breach of contract. [Claim 14-2].

### 3.    The Defendants' Bankruptcy & Kapitus's Claim

The Defendants filed a petition under chapter 13 on April 10, 2023.  [Bankr. ECF No. 1]. On Schedule E/F, the Defendants list Kapitus as a nonpriority unsecured creditor with a claim in the amount of $412,400.00.  [Bankr. ECF No. 1].  On June 6, 2023, Kapitus filed Claim 14-2 (the "Claim") in the amount of $421,704.20.  [Claim 14-2].  In support of the Claim, Kapitus attached the Agreement, the complaint filed in the State Court, the Judgment, and a Merchant Statement of Activity (the "Statement of Activity").  *Id.*  The Statement of Activity shows payments made by

7

CareMax beginning in October 2020 through August 2022.  *Id.*  No objection was filed in response to the Claim.

On March 19, 2025, an Order was entered confirming the Defendants' Chapter 13 Plan—over Kapitus's objection—which provides for payment to Kapitus as a class one joint unsecured creditor up to the amount of $39,003.74.  [Bankr. ECF Nos. 88, 91].

## THE DEEMED ADMITTED FACTS

On April 17, 2024, Kapitus filed a *Motion to Deem Plaintiff's Requests for Admissions Admitted and Memorandum in Support Thereof* (the "Requests for Admission"), requesting entry of an order deeming Plaintiff's First Set of Requests for Admissions admitted facts after the Defendants failed to respond to such discovery requests.  [ECF No. 28].  An *Order Granting Plaintiff's Motion to Deem Requests Admitted* was entered on May 8, 2024.  [ECF No. 29].  The admissions contained therein are referred to herein as the "Deemed Admitted Facts."

The following Requests for Admissions were directed to Uche Etunnuh.  These requests define "you" to be the "Guarantor," which is defined to be Mr. Etunnuh, and the "Co-Guarantor" to be Ms. Etunnuh.  The Deemed Admitted Facts as to Mr. Etunnuh are as follows:

> REQUEST FOR ADMISSION NO. 1:  Admit that on the date Co-Guarantor executed the R&A, you anticipated the possibility that CareMax could cease to do business in the following twelve (12) months.
>
> REQUEST FOR ADMISSION NO. 2: Admit that, on the date Co-Guarantor executed the R&A, you anticipated that you may have to close CareMax in the following twelve (12) months.
>
> REQUEST FOR ADMISSION NO. 3: Admit that on the date Co-Guarantor executed the R&A, you anticipated that you or CareMax may have to file for bankruptcy in the following twelve (12) months.
>
> REQUEST FOR ADMISSION NO. 4: Admit that on the date Co-Guarantor executed the R&A, CareMax or you were in arrears on some debt.

REQUEST FOR ADMISSION NO. 5: Admit that on the date Co-Guarantor executed the R&A, CareMax or you had unpaid tax obligations.

REQUEST FOR ADMISSION NO. 6: Admit that you used the funding received from the Kapitus under the Agreement for purposes other than working capital, business insurance (but not self-insurance programs), franchise fees, employee training, the purchase of equipment, inventory, business supplies and raw materials, and the construction, renovation, or improvement of facilities (but not the purchase of real estate).

REQUEST FOR ADMISSION NO. 7: Admit that on the date you executed the Agreement, you were not solvent.

REQUEST FOR ADMISSION NO. 8: Admit that on the date you executed the Agreement, CareMax was not solvent.

REQUEST FOR ADMISSION NO. 9: Admit that after the date you and Co-Guarantor signed the Agreement and the R&A, you and/or CareMax obtained financing with parties other than Plaintiff and without Plaintiff's approval.

REQUEST FOR ADMISSION NO. 10: Admit that after the date you and Co-Guarantor signed the Agreement and the R&A, you further encumbered Plaintiff's collateral without Plaintiff's approval.

REQUEST FOR ADMISSION NO. 11: Admit that CareMax has been in a precarious financial position for some time prior to the funding provided by Plaintiff.

REQUEST FOR ADMISSION NO. 12: Admit that CareMax used more than one bank account for the collection of receipts generated by CareMax.

REQUEST FOR ADMISSION NO. 13: Admit that, by October 2022, you allowed CareMax's business licenses to expire.

REQUEST FOR ADMISSION NO. 14: Admit that you continued to operate CareMax after the expiration of CareMax's business licenses.

REQUEST FOR ADMISSION NO. 15: Admit that you submitted certain Articles of Cancellation that stated you did not have any creditors at the time of the filing of such Articles of Cancellation.

REQUEST FOR ADMISSION NO. 16: Admit that you never intended to pay back Plaintiff.

The following Requests for Admissions were directed to Ms. Etunnuh.  These requests define "you" to be the "Guarantor," which is defined to be Ms. Etunnuh, and the "Co-Guarantor" to be Mr. Etunnuh.  The Deemed Admitted Facts as to Ms. Etunnuh are as follows:

REQUEST FOR ADMISSION NO. 1: Admit that on the date you executed the R&A, you anticipated the possibility that CareMax could cease to do business in the following twelve (12) months.

REQUEST FOR ADMISSION NO. 2: Admit that, on the date you executed the R&A, you anticipated that you may have to close CareMax in the following twelve (12) months.

REQUEST FOR ADMISSION NO. 3: Admit that on the date you executed the R&A, you anticipated that you or CareMax may have to file for bankruptcy in the following twelve (12) months.

REQUEST FOR ADMISSION NO. 4: Admit that on the date you executed the R&A, CareMax or you were in arrears on some debt.

REQUEST FOR ADMISSION NO. 5: Admit that on the date you executed the R&A, CareMax or you had unpaid tax obligations.

REQUEST FOR ADMISSION NO. 6: Admit that you used the funding received from the Kapitus under the Agreement for purposes other than working capital, business insurance (but not self-insurance programs), franchise fees, employee training, the purchase of equipment, inventory, business supplies and raw materials, and the construction, renovation, or improvement of facilities (but not the purchase of real estate).

REQUEST FOR ADMISSION NO. 7: Admit that on the date you executed the Agreement, you were not solvent.

REQUEST FOR ADMISSION NO. 8: Admit that on the date you executed the Agreement, CareMax was not solvent.

REQUEST FOR ADMISSION NO.9: Admit that after the date you signed the Agreement and the R&A, you and/or CareMax obtained financing with parties other than Plaintiff and without Plaintiff's approval.

REQUEST FOR ADMISSOIN NO. 10: Admit that after the date you signed the Agreement and the R&A, you further encumbered Plaintiff's collateral without Plaintiff's approval.

REQUEST FOR ADMISSION NO. 11: Admit that CareMax has been in a precarious financial position for some time prior to the funding provided by Plaintiff.

REQUEST FOR ADMISSION NO. 12: Admit that CareMax used more than one bank account for the collection of receipts generated by CareMax.

REQUEST FOR ADMISSION NO. 13: Admit that, by October 2022, you allowed CareMax/s business licenses to expire.

REQUEST FOR ADMISSION NO. 14: Admit that you continued to operate CareMax after the expiration of CareMax's business licenses.

REQUEST FOR ADMISSION NO. 15: Admit that you submitted certain Articles of Cancelation that stated you did not have any creditors at the time of the filing of such Articles of Cancellation.

REQUEST FOR ADMISSION NO. 16: Admit that you never intended to pay back Plaintiff.

## ANALYSIS

Section 523(a) of the Bankruptcy Code provides that certain debts are excepted from discharge. These exceptions are construed narrowly, to preserve the Bankruptcy Code's overarching purpose of providing a fresh start to an honest, but unfortunate debtor. *See In re Rountree*, 478 F. 3d 215, 219 (4th Cir. 2007); *see also In re Koep*, 334 B.R. 364, 371 (Bankr. D. Md. 2005) ("exceptions to discharge are strictly construed against creditors in order to protect a debtor's fresh start."). To establish its claim, the creditor must show that its debt falls squarely within one of the enumerated exceptions of Section 523(a). *In re Cockey*, 622 B.R. 178, 186 (Bankr. D. Md. 2020). The creditor bears the burden of proving each element of its claim by the preponderance of the evidence. *See In re Rountree,* 478 F.3d at 220; *Grogan v. Garner*, 498 U.S. 279, 291 (1991). A creditor's failure to establish a single element is fatal to its claim. *See In re Cockey*, 622 B.R. at 186.

Analyzing whether a creditor holds a nondischargeable claim is a two-step process. The creditor must first establish that the debtor owes a debt to the creditor. *See In re Cockey*, 622 B.R. at 186; *In re Reinheimer*, 509 B.R. 12, 14-15 (Bankr. D. Md. 2014). Here, Kapitus filed the Claim in the Defendants' bankruptcy case, to which the Defendants did not file an objection. *See* [Claim 14-2]. That Claim is prima facie evidence of the Claim's validity and amount.[1] *See* Federal Rule of Bankruptcy Procedure 3001(f). Once the debt is established, the question becomes whether the debt is nondischargeable under § 523(a). *See In re Cockey*, 622 B.R. at 186.

Here, Kapitus asserts that the debt is nondischargeable because it was based upon false representations under § 523(a)(2)(A), obtained by a materially false statement respecting the debtor's financial condition under § 523(a)(2)(B), and for embezzlement or larceny under § 523(a)(4). Each of these sections contains an element relating to a debtor's intent, and the Court addresses each in turn.

### 1.      Section 523(a)(2)(A)

Both subsections of § 523(a)(2) require that a plaintiff show a defendant acted with an intent to deceive the plaintiff and that the plaintiff acted with a certain level of reliance. A creditor asserting a claim for nondischargeability under § 523(a)(2)(A) must prove the following five elements by a preponderance of the evidence: (1) false representation, (2) knowledge that the

---

[1] In addition, the Judgment is entitled to full faith and credit in this Court. *See Meindl v. Genesys Pac. Techs., Inc. (In re Genesys Data Techs., Inc.)*, 245 F.3d 312, 316 (4th Cir. 2001). However, the "actually litigated" requirement would prevent application of collateral estoppel principles in this proceeding as to any element of a dischargeability action *except* the existence and amount of damages. The Fourth Circuit has held that a party seeking to rely on collateral estoppel must establish:

> (1) that 'the issue sought to be precluded is identical to one previously litigated' ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was 'a critical and necessary part of the decision in the prior proceeding' ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted 'had a full and fair opportunity to litigate the issue in the previous forum' ("element five").

*Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (quoting *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)).

representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages. *In re Rountree*, 478 F.3d at 218. "Intent to deceive may be inferred by the circumstances, including whether the defendant knowingly or recklessly made false representations, which she should know would induce the plaintiff to rely on them." *In re Koep*, 334 B.R. at 372.

Justifiable reliance under § 523(a)(2)(A) is a less demanding standard than reasonable reliance—required for Kapitus's § 523(a)(2)(B) claim. *See McNulty v. Palecki (In re Palecki)*, 667 B.R. 581, 612-13 (Bankr. D. Colo. 2025). "Justifiable reliance is a subjective standard that focuses on the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than applying a community standard of conduct to all cases." *Id.* at 613 (cleaned up). Justifiable reliance does not require protracted investigations into a debtor's circumstances. Instead, it "requires [only that] the plaintiff must use his senses and at least make a cursory examination or investigation of the facts of the transaction before entering into it." *Id.* For example, plaintiffs that checked references and requested a formal project bid justifiably relied on a defendant-contractor's representations notwithstanding that defendant-contractor breached plaintiffs' contract and misused deposited funds almost immediately after consummating the transaction. *See id.* at 613 (finding justifiable reliance even though plaintiffs did not demand a copy of—or even demand representation as to—defendant's contractor's license or take other objectively reasonable steps).

Here, Kapitus asserts that the representations made by the Defendants in the Agreement and by Ms. Etunnuh in the R&A were false and demonstrate an intent to deceive Kapitus in four ways: (1) Defendants knew that neither they nor their business were solvent; (2) they were in arrears on their debt and tax obligations; (3) they anticipated that their business may cease to

function; and (4) they anticipated that they may have to file for bankruptcy shortly after obtaining the funding from Kapitus.  *See* Plaintiff's Brief at p. 11.  Kapitus points to the Statement of Undisputed Facts to support these averments, which for each these allegations relies on Deemed Admitted Facts ¶¶ 1–3, 5, 7–8.  *See* Statement of Material Facts at ¶¶ 34–37, 40.  The Requests for Admissions define the "Co-Guarantor" to be Ms. Etunnuh and define "you" to be the "Guarantor," which is defined to be Mr. Etunnuh.  The relevant Deemed Admitted Facts—cleaned up and for which there are no material, discernable differences between admission requests made to the individual defendants—are as follows:

> REQUEST FOR ADMISSION NO. 1:  Admit that on the date Co-Guarantor executed the R&A, you anticipated the possibility that CareMax could cease to do business in the following twelve (12) months.

> REQUEST FOR ADMISSION NO. 2: Admit that, on the date Co-Guarantor executed the R&A, you anticipated that you may have to close CareMax in the following twelve (12) months.

> REQUEST FOR ADMISSION NO. 3: Admit that on the date Co-Guarantor executed the R&A, you anticipated that you or CareMax may have to file for bankruptcy in the following twelve (12) months.

> REQUEST FOR ADMISSION NO. 5: Admit that on the date Co-Guarantor executed the R&A, CareMax or you had unpaid tax obligations.

> REQUEST FOR ADMISSION NO. 7: Admit that on the date you executed the Agreement, you were not solvent.

> REQUEST FOR ADMISSION NO. 8: Admit that on the date you executed the Agreement, CareMax was not solvent.

These Deemed Admitted Facts focus on Defendants' state of mind regarding whether CareMax would cease to do business, close, or file for bankruptcy in the twelve months following the execution of the R&A on October 26, 2021, and whether CareMax or Defendants had unpaid tax obligations or were not solvent on that same date.

14

The Statement of Activity attached to the Claim shows an established payment history by CareMax to Kapitus beginning in October 2020 and continuing without any disruption until June 2021. At that point, the Statement of Activity shows that several ACH payments were returned for insufficient funds. The Statement of Activity shows that numerous payments were made by CareMax after the date of the October 2021 Agreement, with the latest payments appearing to occur in August 2022.

Although fraudulent intent can be inferred from the circumstances, evidence of performance can rebut this inference. *See In re Cockey*, 622 B.R. at 187 (finding that intent could not be inferred where defendant satisfied post-agreement obligations and attempted to become current on post-agreement arrears). Here, despite the Deemed Admitted Facts, there is evidence that CareMax performed after entering into the Agreement with Kapitus.

It is also not clear to the Court that Kapitus justifiably relied on the representations made by the Defendants in the Agreement and by Ms. Etunnuh in the R&A. It is clear from the Statement of Activity that before the parties entered into the Agreement, CareMax was having trouble making the ACH payments and that several of the payments were returned for insufficient funds. Although Kapitus states that it relies on a merchant's representations and warranties made in agreements and related documents, it also states that its funding process—which Kapitus asserts is typical for the alternative financing industry—is "truncated" from that of a standard financing institution.[2] Missing is any averment than Kapitus sought to verify *any* of the representations—from what is currently before the Court, it appears that Kapitus did nothing *but* rely on Defendants' representations. It is not clear to the Court what Kapitus's approval process entails beyond the

---

[2] Merchant cash advance agreements are popular among cash-strapped small businesses and are marketed to companies that qualify for more traditional sources of financing. Kara J. Bruce, *The Murkey Process of Characterizing Merchant Cash Advance Agreements*, 42 No. 4 Bankr. L. Ltr. 1 (Apr. 2022).

review of these agreements and attached documents or what is considered industry practice. Without more, the Court cannot conclude that Kapitus made at least a cursory examination or investigation into its transaction with Defendants and CareMax.  However, a reasonable mind could conclude from these facts that Kapitus knew or should have known that CareMax was experiencing financial difficulties.

The Court cannot infer that the Defendants possessed the requisite intent to deceive Kapitus, or that it justifiably relied on the representations made by Defendants, and therefore Kapitus has not met its burden for judgment under §523(a)(2)(A).

## 2.    Section 523(a)(2)(B)

Section 523(a)(2)(B) is similar to, but mutually exclusive of, § 523(a)(2)(A).  4 Collier on Bankr. ¶ 523.08.  In order to sustain an action under § 523(a)(2)(B), a plaintiff must show that: (1) the defendant made a written statement; (2) the written statement was about her financial condition; (3) the statement was materially false; (4) the defendant published the statement with the intent to deceive the plaintiff; and (5) the plaintiff reasonably relied on the false statement. *In re Koep*, 334 B.R. at 372–73.  Rather than justifiable reliance—required under § 523(a)(2)(A)—a plaintiff must have reasonably relied to succeed under § 523(a)(2)(B).  Reasonable reliance is a higher standard than justifiable reliance.  *In re Palecki*, 667 B.R. at 613.  "Reasonable reliance is an objective standard based upon whether a reasonable person would have relied on the alleged false representations."  *Id.* at 612-13.  A merchant cash advance lender reasonably relies on its borrower's representations when it takes affirmative steps to verify the borrower's financial condition.  *See Capozzolo v. AKF, Inc.*, 626 F. Supp. 3d 604, 607 (W.D.N.Y. 2022) (affirming bankruptcy court determination that debt was nondischargeable under § 523(a)(2)(B) when the lender reviewed the debtor's balance sheets, profit-and-loss statements, bank statements, list of

16

accounts receivables, tax returns, and list of outstanding merchant cash obligations as part of its loan approval process).

At the outset, the Court questions whether the Defendants' representations as to their individual financial conditions—as opposed to those related to CareMax's financial condition—were material.  If the representations as to the Defendants' financial conditions were not relevant, § 523(a)(2)(B) is inapplicable.  For the reasons discussed in the section above, the Court cannot find at this juncture that the Defendants possessed the requisite intent to deceive Kapitus.  Likewise, the Court cannot find that, as a matter of law, Kapitus reasonably relied on the Defendants' representations.  The reasonable reliance standard cannot be satisfied where the Plaintiff also fails to satisfy the Court that it justifiably relied on a defendants' representations.  However, the Court also questions whether a merchant cash lender like Kapitus *can ever* reasonably rely on a borrower's or guarantor's representations alone given the nature of such loans or whether the "truncated" nature typical for the alternative financing industry will typically preclude such a determination.

At this point, the Court cannot grant summary judgment for Kapitus on its § 523(a)(2)(B) claim because Kapitus has not satisfied its burden to demonstrate that the Defendants possessed the requisite intent to deceive or that Kapitus reasonably relied on the Defendants' representations.

3.      **Section 523(a)(4)**

Kapitus alleges that the Defendants engaged in embezzlement or larceny by using funding received from Kapitus for their own purposes and not for those the parties agreed to in the Agreement.

Section 523(a)(4) excepts from discharge debts for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  The elements of embezzlement and larceny are

established by federal common law rather than state law. *See In re Cockey*, 622 B.R. at 188 (citing *In re Anderson*, 2018 WL 1475981 *18 (Bankr. D. Md. March 23, 2018); *In re Kaplan*, 608 B.R. 443, 456 (Bankr. E.D. Penn. 2019)). "Fraudulent intent is the key to a finding of embezzlement or larceny and may be established by circumstantial evidence." *In re Anderson*, 2018 WL 1475981 *18. "For purposes of section 523(a)(4), fraud means "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong." *In re Durant*, 586 B.R. 577, 583–84 (Bankr. D. Md. 2018). "Likewise, it is now also well settled that in the context of this statute that the term defalcation requires a finding of at least an intentional wrong or in the absence of intentional wrongdoing, a finding that the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty." *Kovens v. Goodwich (In re Goodwich)*, 517 B.R. 572, 584 (Bankr. D. Md. 2014) (cleaned up).

When, as here, a plaintiff seeks a determination that a debt is nondischargeable because it arises from embezzlement, the plaintiff must prove (1) the debtor appropriated funds for the debtor's own benefit by fraudulent intent or deceit; (2) the debtor deposited the resulting funds in an account accessible only to the debtor; and (3) the disbursal or use of those funds without explanation of reason or purpose. *First State Ins. Co. v. Bryant (In re Bryant)*, 147 B.R. 507, 512 (Bankr. W.D. Mo. 1992); 4 Collier on Bankr. ¶ 523.10. The fact that property, including money, subject to an enforceable contract goes missing does not inherently support a claim of embezzlement. *See Werner v. Hofman (In re Werner)*, 144 B.R. 459, 464 (Bankr. N.D. 1992) (holding that missing cattle did not support a claim of embezzlement under a cattle lease agreement where the terms of the negotiated agreement manifested nothing more than the hope that no problem would ensue). Embezzlement differs from larceny in the fact that the original taking of

property is lawful or with the owner's consent in embezzlement, while in larceny the felonious intent must have existed at the time of the taking.  4 Collier on Bankr. ¶ 523.10.

It is not clear to the Court that Plaintiff has alleged, let alone established, facts which support its § 523(a)(4) claim.  By virtue of the Deemed Admitted Facts, Defendants admit that they "used the funding [from Kapitus] for purposes other than" business expenses allowed under the Agreement, but Plaintiff has not averred that the funds were used for Defendants' own benefit. Likewise, Plaintiff has not averred that Defendants deposited the borrowed funds in an account only accessible by Defendants.  Indeed, Defendants initially complied with the requirement that receipts be deposited into an account accessible by Plaintiff.  Plaintiff's point that Defendants later made their receipts inaccessible to Plaintiff speaks more to the fact that Defendants' business operations did not go as the parties intended, but Plaintiff must show more than that—it must show that Defendants used the borrowed funds without explanation of reason or purpose.  Similarly, the Court cannot conclude that Defendants had the requisite intent when they received the borrowed funds to support a claim for larceny.  Accordingly, the Court cannot grant summary judgment on Plaintiff's § 523(a)(4) claim.

## CONCLUSION

Based on the record before the Court, Kapitus has not satisfied its burden of showing the absence of any material fact dispute sufficient to support its entitlement to judgment as a matter of law that the debt incurred by Defendants is nondicsarchgeable pursuant to §§ 523(a)(2)(A), (2)(B), or (4).  This conclusion does not preclude Kapitus from offering additional evidence at trial in support of its claims and does not suggest there are no facts on which Kapitus might ultimately prevail.  The Court merely concludes that the record presently before it on Kapitus's Motion does not support the grant of summary judgment in Kapitus's favor.  An appropriate order will follow.

cc:     Plaintiff
        Counsel for Plaintiff – Lacey Rochester
        Defendants
        Counsel for Defendants – Chidiebere Onukqugha

**END OF MEMORANDUM OPINION**